COMMONWEALTH *vs.* BOBBY N. ROBBINS
(and seven companion cases[1] ).

Hampden. January 9, 1990. - April 3, 1990.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Search and Seizure*, Threshold police inquiry, Automobile. *Constitutional Law*, Search and seizure.

In the circumstances of a lawful stop of a motor vehicle wherein the operator was lawfully arrested, police officers, before allowing the passenger to drive away, acted reasonably in conducting a limited search in the interior of the vehicle to determine whether a brown-handled or wooden-handled object wedged between the front seats, in plain view, was a weapon. [150-152]

INDICTMENTS found and returned in the Superior Court Department on December 22, 1987.

Pretrial motions to suppress evidence were heard by *George C. Keady, Jr.*, J.

The Commonwealth's application for an interlocutory appeal was allowed by *Wilkins*, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him.

*Brett J. Vottero*, Assistant District Attorney, for the Commonwealth.

*William R. Hill, Jr.*, Committee for Public Counsel Services, for the defendants.

ABRAMS, J. A grand jury in Hampden County indicted the defendants, Bobby N. Robbins and Jimmy L. Crapps, for possession of heroin with intent to distribute, conspiracy to distribute heroin, conspiracy to possess cocaine, and posses-

---

[1]Four indictments against Jimmy L. Crapps and three against Bobby N. Robbins.

sion of cocaine. Prior to trial, each defendant filed a motion to suppress evidence seized by the police from a silver Cadillac automobile in the early morning hours of August 24, 1987. After a hearing, a judge in the Superior Court allowed the defendants' motions to suppress. A single justice of this court allowed the Commonwealth's application for leave to take an interlocutory appeal and reported the appeal to this court. See Mass. R. Crim. P. 15 (b) (2), 378 Mass. 882, 884 (1979). We reverse the order suppressing the evidence and remand these cases to the Superior Court for further proceedings.

After hearing, the judge found the following facts. At approximately 1:30 A.M. on August 24, 1987, while on routine patrol in central Massachusetts, State Trooper Leonard P. Sansoucy, an experienced drug officer, saw a silver Cadillac automobile with a nonoperational headlight. The trooper turned on his flashing overhead lights; the Cadillac stopped in the breakdown lane. Sansoucy approached the driver's side of the vehicle and asked the driver for his license and the registration.

Robbins, the driver, said he did not have a license, and never had one. He removed the registration from the glove compartment. It revealed that the Cadillac automobile was registered to Crapps, the passenger. Crapps produced a valid license. Robbins told the trooper he was driving because Crapps felt too ill to drive.

The trooper returned to his car for a records check. The check revealed that there were no outstanding warrants for Crapps and that the registration was correct. The trooper also learned that there was an outstanding warrant for Robbins and that his license had been suspended. Sansoucy called for assistance and within a few minutes Trooper Theodore B. Condon arrived.

The two troopers then approached the Cadillac automobile, each on a different side of the automobile. Sansoucy went to the driver's side and ordered Robbins to get out of the automobile. After a "patdown," Robbins was arrested for operating after suspension of his license and on the outstand-

ing warrant. Robbins was handcuffed and placed in the back seat of Sansoucy's cruiser. Sansoucy gave Robbins the warnings required by *Miranda* v. *Arizona*, 384 U.S. 436 (1966), and satisfied himself that Robbins understood the warnings.[2] Robbins then told Sansoucy that he and Crapps drove to New Jersey to see Crapps's ill brother. However, Robbins could not give Crapps's brother's name or the name of the New Jersey town where Crapps's brother lived.

Sansoucy determined that Crapps could leave and returned to the passenger side of the automobile, where Condon was standing to see whether Crapps was well enough to drive. At the vehicle, Condon told Sansoucy that he had seen a brown-handled object[3] wedged into a crack in the cushion of the front seat in the area between the passenger seat where Crapps was sitting and the driver's seat. Condon thought the brown-handled object was a weapon.

The troopers ordered Crapps out of the Cadillac. Crapps cooperated; he got out and went to the rear of the automobile. Sansoucy then went to the driver's side of the automobile with a lit flashlight. He opened the door of the automobile to check on the brown-handled object. On opening the door, Sansoucy saw a glass tube protruding from under the driver's seat. He removed the glass tube from the automobile. The glass tube was white at the top and blackened toward the bottom and had a wire mesh attached to the top. Sansoucy knew from his experience as a drug officer that the glass tube was a "crack" cooker.[4] As Sansoucy removed the glass tube, he saw and also removed a single-edged razor blade from under the driver's seat. Sansoucy continued to investigate the brown-handled object wedged in the front seat and removed it. The object was a nine-inch serrated knife

---

[2]Because he suppressed the evidence, the judge did not address the adequacy of the Miranda warnings and waivers. No issues concerning either the warnings or the waivers are before us.

[3]The record describes the object, interchangeably, as brown-handled or wooden-handled.

[4]Both "crack" cookers contained residue of cocaine.

with a brown handle. At that point, Crapps also was arrested.

The troopers made a brief inventory search according to State police policy and made arrangements to have the Cadillac towed. Condon went to the passenger side of the front seat and found another "crack" cooker. The troopers then recited the Miranda warnings to Crapps. See note 2, *supra.* Crapps told the officers that he went to New Jersey to visit his sick brother. He also could not tell the officers his brother's name or the name of the town in New Jersey where his brother lived.

After the troopers took Crapps and Robbins to the station, Sansoucy applied for a warrant to search the automobile. Based on what they already had found, the officers obtained a search warrant. In the course of executing the warrant, the officers found sixty-eight glassine packets containing heroin.

The judge ruled that "[t]he existence of a weapon near Crapps could have constituted a danger, but that danger ceased when Crapps got out of the vehicle and went to its rear . . . ." He concluded that it was not illegal to have a bread knife in the automobile and noted that "[n]o threat was ever made." Crapps, like Robbins, was "cooperative" and "[b]oth . . . were removed from the knife where a danger might have existed."[5] The judge concluded that Sansoucy's action in opening the door of the vehicle which produced the first "crack" cooker was unjustified and that the items found thereafter were all based on the unjustified opening of the vehicle door. He ordered all the evidence found in the automobile suppressed. The Commonwealth appealed. We reverse.

The Commonwealth does not contend that the original stop permitted a search for the purpose of seizing "fruits, instrumentalities, contraband and or other evidence of the

---

[5]The judge correctly determined that Robbins, as well as Crapps, had standing to object to the search. See, e.g., *Commonwealth* v. *Amendola*, 406 Mass. 592, 596-601 (1990). See also *Commonwealth* v. *Podgurski*, 386 Mass. 385 (1982), cert. denied, 459 U.S. 1222 (1983). The Commonwealth does not argue otherwise.

crime for which an arrest [had] been made." G. L. c. 276, § 1 (1988 ed.). The Commonwealth also does not contest the principle that, because the initial search was made without a warrant, it has the burden of proving the reasonableness of the search. *Commonwealth* v. *Sumerlin*, 393 Mass. 127, 128-129 n.1 (1984), cert. denied, 469 U.S. 1193 (1985); *Commonwealth* v. *Antobenedetto*, 366 Mass. 51, 57 (1974). Rather, the Commonwealth argues that the initial search was a reasonably necessary lawful protective search. We agree.

"Our appellate function requires that we make our own independent determination on the correctness of the judge's 'application of constitutional principles to the facts as found . . . .' " *Commonwealth* v. *Haas*, 373 Mass. 545, 550 (1977), quoting *Brewer* v. *Williams*, 430 U.S. 387, 403 (1977), quoting the separate opinion of Justice Frankfurter in *Brown* v. *Allen*, 344 U.S. 443, 507 (1953). Applying constitutional principles to the instant case, we conclude that the evidence should not have been suppressed. "We believe the circumstances [in these cases] justified the [trooper's] actions." *Commonwealth* v. *Sumerlin*, *supra* at 129.

"[T]he issue is whether a reasonably prudent [person] in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Michigan* v. *Long*, 463 U.S. 1032, 1049-1050 (1983), quoting *Terry* v. *Ohio*, 392 U.S. 1, 27 (1968). The defendants do not contest the judge's implicit ruling that the stop was justified. "If the stop was justified, the officers could take reasonable precautions for their own protection. Such precautions may include ordering occupants out of a car for questioning. *Pennsylvania* v. *Mimms*, 434 U.S. 106, 111 (1977). They also may include a search extending into the interior of an automobile, but they are 'confined to what is minimally necessary to learn whether the suspect is armed and to disarm him once the weapon is discovered.' " *Commonwealth* v. *Ferrara*, 376

Mass. 502, 505 (1978), quoting *Commonwealth* v. *Almeida*, 373 Mass. 266, 272 (1977).[6]

In the present case, while standing outside the vehicle, the troopers clearly saw the brown-handled object wedged in the front seat, where Crapps was seated on the passenger side. It was late at night. Crapps's companion had just been arrested on an outstanding warrant and had given the officers an unlikely explanation of the two men's activities that evening. Before letting Crapps move to the driver's side where he would have had control over the vehicle and the object, the troopers could order him out of the vehicle. They then could determine whether the object wedged in the front seat was, in fact, a weapon which could be used against them. The troopers were not required to gamble with their personal safety.

"[A] *Terry* type of search may extend into the interior of an automobile so long as it is limited in scope to a protective end." *Commonwealth* v. *Almeida*, 373 Mass. 266, 272 (1977). We believe the investigation of the object wedged in the front seat and clearly visible from outside the automobile was limited to a protective end and permitted the trooper to open the automobile door. The search in this case was confined to what was minimally necessary to learn whether the object wedged in the front seat was, in fact, a weapon. With the door open, the "crack" cooker was immediately visible. It is irrelevant that the object turned out to be a knife that was legal to possess. The issue is the reasonableness of the troopers' action in initiating the limited search.

The order suppressing the evidence is reversed, and the cases are remanded to the Superior Court for trial.

*So ordered.*

---

[6]The defendants also do not take issue with Trooper Sansoucy's use of a flashlight. See *Commonwealth* v. *Cavanaugh*, 366 Mass. 277, 281 (1974).