COMMONWEALTH vs. JOHN C. JOHNSON.

Suffolk. September 10, 1992. - November 5, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Controlled Substances. Constitutional Law*, Search and seizure. *Search and Seizure*, Threshold police inquiry, Arrest, Protective frisk. *Evidence*, Expert opinion. *Witness*, Police officer. *Words*, "Distribute."

In the circumstances of a lawful stop of a vehicle and a pat-frisk of the driver, a police officer was warranted for his own protection in ascertaining what the object was that he had seen the driver putting inside the waistband of his trousers as the police officer approached him. [600-602]

Where a police officer had probable cause to arrest the driver of a car for operating to endanger, seizure of an object that the driver had attempted to conceal in his trousers as police officers approached him was proper as incident to a lawful arrest. [602]

Police officers who had probable cause to arrest a defendant on a controlled substance charge properly conducted a further search of the defendant's person, incident to the arrest, for other evidence of the crime. [603]

At a criminal trial, a police officer, qualified as an expert, was properly allowed to testify that, in his opinion, a quantity of cocaine seized from the defendant was packaged in a manner consistent with an intent to distribute it. [603-604]

At the trial of an indictment for trafficking in cocaine, the judge correctly instructed the jury on the meaning of the word "distribute" appearing in G. L. c. 94C, § 32E (*b*), and the judge properly declined to give instructions on the issue requested by the defendant. [604-605]

INDICTMENTS found and returned in the Superior Court Department on August 11, 1989.

A pretrial motion to suppress evidence was heard by *Robert A. Mulligan*, J., and the cases were tried before him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Patricia A. O'Neill*, Committee for Public Counsel Services, for the defendant.

*Roger L. Michel, Jr.*, Assistant District Attorney, for the Commonwealth.

LYNCH, J. The defendant was found guilty by a jury of trafficking in cocaine, possession of marihuana,[1] and carrying a firearm without a license. On appeal he argues that the trial judge, who was also the motion judge, erred in: (1) denying his pretrial motion to suppress evidence seized from his person and automobile without a warrant; (2) admitting police testimony at trial concerning the packaging and purity of cocaine; and (3) refusing to give an instruction that the defendant's transfer of drugs to other joint possessors strictly for personal use does not constitute distribution for purposes of the trafficking charge. A stay of execution of sentences was granted by a single justice of the Appeals Court pending appeal. We transferred the matter here on our own motion, and we now affirm.

1. *Motion to suppress.* We summarize the facts found by the judge. At approximately 10:15 P.M. on November 10, 1988, Officer Kevin McGill of the Boston police department was operating an unmarked police vehicle accompanied by Detectives Robert Flynn and Paul Martin on Walnut Avenue in the Roxbury section of Boston. At its intersection with St. Richard Street, a black Alfa-Romeo automobile operated by the defendant crossed Walnut Avenue at a high rate of speed and almost collided with the police vehicle. The officers activated their siren, placed a flashing light on their vehicle, and pursued the defendant over several streets. The chase lasted from three to five minutes with the defendant driving at speeds of up to fifty miles an hour. Detective Superintendent Willis Saunders, driving a marked police cruiser, responded to the officers' call for assistance and forced the defendant's automobile to stop at the intersection of New Dudley and King Streets.

---

[1]The indictment charging possession of marihuana was placed on file with the defendant's consent and is not part of the appeal.

As Officers Flynn, Martin, and McGill ran up to the automobile, Officer Flynn saw the defendant "placing something inside his waistband of his pants." Officer Flynn yelled that the defendant was putting something inside his pants, drew his weapon and told the defendant to "freeze." Officers Martin and McGill pulled the defendant from his automobile.[2] Officer McGill frisked the defendant and withdrew a plastic bag containing a lump of white powder and six small paper folds from the defendant's pants. The officers also found three bullets in a pouch strapped around the defendant's waist under his shirt. The defendant was arrested, handcuffed, and placed in the cruiser.

Officer McGill then searched the defendant's automobile and found a handgun under the driver's seat.

a. *Stop and frisk.* The defendant does not dispute the motion judge's ruling, citing *Terry* v. *Ohio*, 392 U.S. 1 (1968); *Pennsylvania* v. *Mimms*, 434 U.S. 106 (1977), that, "[w]here the Alfa-Romeo had failed to stop until it was forced to do so, and where the defendant was seen reaching for the waist area of his pants, the police were justified in removing him from the car and conducting a limited pat/frisk of his person." The defendant contends however that the scope of the search exceeded permissible grounds because the Commonwealth has failed to show that Officer McGill believed the concealed package he felt while frisking the defendant was a weapon. If the stop was justified, the officers could take reasonable precautions for their own protection. *Commonwealth* v. *Robbins*, 407 Mass. 147, 151 (1990). We conclude that the motion judge properly admitted the evidence. The issue is whether all the circumstances faced by the officer, taken together, "are enough to warrant belief by a 'reasonably prudent man . . . that his safety or that of others was in danger.' " *Commonwealth* v. *Fraser*, 410 Mass.

---

[2] In his findings the judge referred to Martin as the officer who pulled the defendant from his automobile and frisked him. However, the evidence presented at the hearing indicates that Officer McGill, along with Martin, removed the defendant from the vehicle, and that McGill frisked the defendant.

541, 546 (1991), quoting *Terry* v. *Ohio, supra* at 27. We believe the circumstances justified the officer's actions. *Commonwealth* v. *Sumerlin*, 393 Mass. 127, 129 (1984), cert. denied, 469 U.S. 1193 (1985). The officers were faced with an individual who, while driving at a high rate of speed, almost hit their unmarked vehicle. He then attempted to evade the police and was only stopped after a police cruiser forced him to the curb. As the officers ran toward the defendant's vehicle, they saw the defendant reaching into his pants. In these circumstances it was not necessary for the judge to have specifically found that the officer believed that the bulge inside the defendant's pants was a weapon. "[I]t was necessary for the protection of [the officer] and others to take swift measures to discover the true facts and neutralize the threat of harm if it materialized." *Terry* v. *Ohio, supra* at 30.

Furthermore, we note that "[t]o all of these facts the officer [was] entitled to apply [his] police experience." *Commonwealth* v. *Sumerlin, supra* at 130, quoting *Commonwealth* v. *Silva*, 366 Mass. 402, 407 (1974). Indeed, Officer McGill "had no more than a few seconds in which to assess the extent, if any, of the danger, and to ascertain the most effective and least intrusive means of protecting himself."[3] *Commonwealth* v. *Sumerlin, supra* at 129-130. Moreover, the officer did not conduct a general exploratory search for whatever evidence of criminal activity he might find. *Terry* v. *Ohio, supra* at 30. Rather, the search was " 'strictly tied to and justified by' the circumstances which rendered its initiation permissible." *Commonwealth* v. *Silva, supra* at 407, quoting *Terry* v. *Ohio, supra* at 19. The officer sought only to ascertain what the object was that he had seen the defendant hiding inside his pants. The officer "confined his search strictly to what was minimally necessary to learn whether the

[3]"The officer could reasonably have taken into account the 'inordinate risk confronting an officer as he approaches a person seated in an automobile.' " *Commonwealth* v. *Sumerlin*, 393 Mass. 127, 130 (1984), cert. denied, 469 U.S. 1193 (1985), quoting *Pennsylvania* v. *Mimms*, 434 U.S. 106, 110 (1977).

[defendant was] armed." *Terry* v. *Ohio,* supra at 30. See *Commonwealth* v. *Robbins, supra* at 151.

Given the circumstances faced by the officers in this case, they were warranted for their own protection in finding out what the defendant had concealed inside his pants. Police officers are "not required to gamble with their personal safety." *Commonwealth* v. *Robbins, supra* at 152.

b. *Search incident to arrest.* Although the judge found that the defendant was arrested after the search, the circumstances disclose that the seizure of the concealed bag of cocaine was also justified as a search incident to lawful arrest under G. L. c. 276, § 1 (1990 ed.). The officers had probable cause to arrest the defendant for operating to endanger. When the defendant was observed placing something inside his pants, Officer Martin opened the driver's door of the vehicle and pulled the defendant from the automobile. From this point forward the defendant was effectively under arrest. The fact that the search preceded the formal arrest is not important, "as long as probable cause [to arrest] existed independent of the results of the search." *Commonwealth* v. *Santiago,* 410 Mass. 737, 742 (1991), quoting *Commonwealth* v. *Brillante,* 399 Mass. 152, 154-155 n.5 (1987). Since the purpose of the subsequent search was to identify the object the defendant attempted to conceal inside his pants, the cocaine was discovered in the course of a search conducted for the purpose of removing any weapon that might be used to resist arrest or to effect escape.[4] Thus, the subsequent seizure of the cocaine was proper as an incident to the lawful arrest of the defendant.[5]

---

[4]General Laws c. 276, § 1 (1990 ed.), states in pertinent part: "A search conducted incident to arrest may be made only for the purposes of seizing fruits, instrumentalities . . . and removing any weapons that the arrestee might use to resist arrest or effect his escape."

[5]General Laws c. 276, § 1, does not make inadmissible any evidence seized in a search incident to an arrest that is not evidence related to the crime which justified the arrest. See *Commonwealth* v. *Puleio,* 6 Mass. App. Ct. 909 (1978) (handgun, discovered on defendant's person during a "pat down" which was conducted for concealed weapons, admissible even

Once the officers discovered the cocaine, they had probable cause to arrest the defendant on a controlled substance charge and conduct a further search incident to arrest for "other evidence of the crime for which the arrest has been made." G. L. c. 276, § 1. The search of the pouch strapped around defendant's waist for drugs and the subsequent seizure of the bullets were therefore proper.[6] The defendant contends that, because the initial search was illegal, the subsequent seizure of the weapon and the bullets was also improper. Since we conclude that the initial pat frisk was proper, we need not address the issue.

2. *The police officer's testimony.* The defendant argues that it was error to permit a police detective to testify that, in his opinion, the manner in which the cocaine possessed by the defendant was packaged was consistent with an intent to distribute. There was no error.

The detective had been a police officer for ten years and assigned as a detective to the drug control unit for two years. He had participated in hundreds of drug investigations and had received specialized training. The judge allowed the prosecutor to qualify the officer and permitted him to testify as an expert.[7] See *Commonwealth* v. *Salcedo*, 405 Mass. 346, 350 (1989) ("It is evident from the transcript that the

---

though the defendant had been arrested for attempting to steal a wheel from a parked motor vehicle).

This case must be distinguished from searches, incident to a defendant's arrest, of closed containers, luggage, and the like, that are not on the defendant's person and that cannot contain weapons that might be used to escape. See *Commonwealth* v. *Rostad*, 410 Mass. 618 (1991); *Commonwealth* v. *Ferguson*, 410 Mass. 611 (1991).

[6] Mere references in the defendant's brief and at oral argument to art. 14 of the Massachusetts Declaration of Rights do not rise to the level of appellate argument. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975). Neither was the issue of an art. 14 violation effectively argued below. Accordingly, this argument is deemed to be waived. *Commonwealth* v. *Lydon, ante* 309, 318 (1992). *Haran* v. *Board of Registration in Medicine*, 398 Mass. 571, 581 n.7 (1986).

[7] The judge overruled defense counsel's objection to the qualification of the officer as an expert. The judge then overruled defense counsel's objection to the officer's testifying that the purity of the cocaine was consistent with distribution. The judge next overruled counsel's objection to the of-

judge believed the . . . officer was qualified, and his allowing the testimony implies he made that finding").

The use of narcotics investigators to testify in this manner as experts in drug cases has been consistently upheld. *Commonwealth* v. *Montanez*, 410 Mass. 290, 305 (1991). *Commonwealth* v. *Johnson*, 410 Mass. 199, 202 (1991). The admission of such evidence is largely within the discretion of the judge, whose ruling will be reversed only where the admission constitutes an abuse of discretion or error of law. *Commonwealth* v. *Johnson, supra,* citing *Commonwealth* v. *Pikul,* 400 Mass. 550, 553 (1987).

3. *The challenged instruction.* The defendant claims the judge improperly instructed the jury on the meaning of the word "distribute" as contained in the trafficking statute, G. L. c. 94C, § 32E (*b*) (1990 ed.). The judge instructed the jury: "The word distribute includes all forms of physical transfer. It is unlawful for a person to even make a gift of a controlled substance." He also instructed them, "Where two or more persons simultaneously and jointly acquire possession of a drug for their own use intending only to share it together, their only crime is simple joint possession. But that [is] only limited to the situation when the persons acquire the drug simultaneously at the outset, when the persons are there at the acquisition together and simultaneously acquire."

The defendant requested that the judge instruct the jury to the effect that where two or more persons contribute money to acquire drugs but only one . person carries out the purchase, they are guilty of mere possession since they are coowners of the drugs from the outset and intend only to share the drugs and not to distribute them.[8] We conclude that the judge's instructions were proper.

---

ficer's testifying that the packaging of the cocaine was not consistent with personal use.

[8]The defendant requested that the judge instruct the jury in part as follows:

"Trafficking in a controlled substance is possession of the controlled substance over a statutory amount for commercial or business like distribution

In order to convict a defendant of possession with intent to "distribute" the Commonwealth must prove that the defendant delivered or intended to deliver the substance "other than by administering or dispensing a controlled substance." G. L. c. 94C, § 1 (1990 ed.). The term "[d]eliver" is defined as "to transfer, whether by actual or constructive transfer, a controlled substance from one person to another, whether or not there is an agency relationship." *Id.* Thus, to purchase the substance, even with friends' money, intending to transfer it to them, constitutes distribution within the meaning of the trafficking statute. See *Commonwealth* v. *Poole*, 29 Mass. App. Ct. 1003, 1004 (1990) (defendant's storing marihuana with intention "to transfer" it back to owner constituted distribution). The defendant's reliance on *United States* v. *Swiderski*, 348 F.2d 445 (2d Cir. 1977), is misplaced. See note 8, *supra.* A review of the Federal decisions construing *United States* v. *Swiderski*, reveals that its holding has been "limited to the passing of a drug between joint possessors who simultaneously acquire possession at the outset for their own use." *United States* v. *Rush*, 738 F.2d 497, 514 (1st Cir. 1984), quoting *Swiderski*, *supra* at 450-451. See *United States* v. *Wright*, 593 F.2d 105, 108 (9th Cir. 1979) (*Swiderski* not applicable where drug not "simultaneously and jointly" acquired). The denial of the requested instruction was therefore proper.

In sum, we uphold the denial of the motion to suppress and conclude that the judge properly admitted the police of-

---

and is differentiated from mere possession of the illegal substance for personal use. *United States* v. *Swiderski*, 548 F.2d 445 (2d Cir. 1977).

"To find that the defendant has violated the trafficking statute you must find that the defendant had a financial interest in the transaction or that he was employed or engaged in the enterprise or commercial aspect of distributing the controlled substance for personal or financial gain apart from mere possession and personal use of the controlled substance. *Commonwealth* v. *Harvard*, 356 Mass. 452 (1969) . . . .

" . . . .

"If the parties involved acquire possession from the outset and none intends to distribute the narcotic substance to any other person, they do not serve as a link in the chain of drug distribution."

ficer's testimony and instructed the jury. Accordingly, we affirm.

*So ordered.*