Welch, J.
Introduction
The defendant, Raphael Lopez, now moves pursuant to Mass.R.Crim.P. 13 to suppress all evidence seized from his person or from as area of the premises under his exclusive control. The defendant claims that the evidence seized was not pursuant to a lawful arrest, it was not in plain view, there was no probable cause, no warrant, no exigent circumstances, without consent, and in violation of the Fourth and fourteenth Amendments of the United States Constitution, Article IV of the Declaration of Rights of the Constitution of the Commonwealth of Massachusetts and G.L.c. 276.
After holding an evidentiary hearing, this court disagrees with the defendant. The motion must be denied.
Findings of Fact
The following findings of fact were dictated from the bench:
On September 18, 1995, Detective Petralia and Detective Burokas of the Lawrence Police Department were dispatched to 12-14 Crosby Street in Lawrence, Massachusetts to investigate reports of drug activity. This particular apartment was the subject of an ongoing drug investigation for the previous year.
In fact, on Friday, September 15, 1995, both Detective Petralia and Detective Burokas were involved in a reverse sting operation out of that exact apartment. At that time they had arrested 12 people, where the police were selling crack cocaine. The method in which these transactions took place was that someone would come up to the first-floor-rear apartment, tap on the kitchen window, the window would be opened or was open so that some object, such as money, could be passed through and crack cocaine would be handed out through the window. This occurred on twelve occasions in a short period of time on the 15th, and those people were arrested. At that time it was apparent that no one lived in the apartment, but rather, that it was simply being used as an illegal drug distribution center.
After their busy Friday evening operating this “reverse sting,” the two detectives were off duty for the weekend. On Monday, September 18, 1995, Detectives Petralia and Burokas return to work at five o’clock in the evening. Upon arriving at their desks, they review messages relating reports that drug distribution activity was again underway at the same apartment located at 12-14 Crosby Street. They also personally receive at least one anonymous phone call relaying the same information.
Later that evening, at approximately 9 p.m., the detectives return to 12-14 Crosby Street to verify the reports of illegal drug activity. Both detectives proceeded to the third floor apartment and asked the tenant, an individual with whom they were acquainted, if they could go through this apartment so they could gain access to the rear hallway which would allow them to enter the first-floor-rear apartment, the same apartment where the reverse sting had been operated the Friday before.
The tenant on the third floor agreed to their request and both detectives went down the stairs and found the door to the first-floor-rear apartment open. They did a sweep search of the apartment at this time. They did find evidence that the apartment had recently been occupied in some manner; that is that there were candles lit in the apartment. Indeed, on the 15th they had found the same candles lit and they had snuffed them out. They return on Monday and find the candles lit again. The officers had further evidence that drug activity was again occurring at this location. Besides the calls regarding drug activity, when the detectives pulled up to the apartment building they saw a white male in the back alleyway near the kitchen window, the same kitchen window where the cocaine was distributed before, and he flees from that location upon the police’s arrival.
Given this evidence, they have a reasonable suspicion that drug activity is going on there again. Within five minutes of their being in that first-floor-rear apartment on September 18, the detectives hear a tap on the window. At this time Detective Petralia looks out through closed mini-blinds and identifies the defendant, Raphael Lopez as the person knocking on the kitchen window, the same kitchen window where drug dealing had been going on. At this time the detective puts his hand underneath the open part of the window. At that time the defendant, Raphael Lopez, does not hand him money, but instead whistles, looks around and says in Spanish, words to the effect, open the door. Detective Burokas, who understands Span *344 ish, informs Detective Petralia what the defendant said.
Thereupon, Detective Burokas goes out of the kiLchen into a common hallway and to the door which leads to the back alley. He slides the upper bolt from the door so as to open it, opens the door and stands behind the door. At that time the defendant enters the doorway into the rear common hallway. The defendant then turns left heading toward the kitchen, the same kitchen where the drug activity had been taking place. This is a location where the defendant had no right of occupancy, since no one was living in the apartment. At that time Detective Petralia is actually coming out of the kitchen door into the common hallway and his badge is apparent. At that moment, Raphael Lopez notices Detective Petralia and Detective Petralia announces that he is a police officer.
Immediately, thereafter, the defendant Raphael Lopez, moves his right hand in a grasping motion toward a bulge located in the small of his lower back and begins to turn towards the doorway he has just entered and, indeed, attempts to jump back out that door. At this time Detective Burokas comes out from behind the door which was opened for the defendant and also observes the defendant grabbing for a bulge in the small of his back. Both detectives see a large bulge in the small of the defendant’s back, underneath his clothing. The bulge was approximately at the belt line.
This Court finds that at this time both Detectives had a reasonable apprehension that the bulge was indeed a weapon. Based on the officers’ experience and expertise it was not uncommon for people buying or selling or distributing cocaine in Lawrence to be armed. It was not uncommon for someone to conceal both drugs and a weapon, be it a knife or a handgun, in the small of their back. I find that both detectives were reasonably and appropriately concerned that the defendant was concealing a weapon in the small of his back, under his clothes and was reaching for that weapon. It is apparent to this Court that both Detectives had reasonable articulable suspicion under the Terry case to permit a threshold inquiry and pat down of the defendant, not only as to whether he was carrying a concealed weapon, but also whether he was involved in the cocaine transactions which were occurring at that kitchen location in 12-14 Crosby Street on the first-floor-rear apartment.
As the defendant stalled to flee, Detective Burokas grabbed his right hand and stopped him. The hand which Burokas grabbed was the hand which was moving toward the object concealed under the defendant’s clothing, which the police thought might be a weapon. Burokas then touched a softball size package which felt both soft and hard. He felt many objects inside the package which felt like ping-pong balls. Based on his training and experience, as well as what he had seen of the defendant’s suspicious conduct at the window, Detective Burokas believed that to be a package containing many bundles of crack cocaine. He then reached inside the defendant’s clothing and retrieved a plastic-wrapped package which he visually confirmed as containing numerous smaller bundles of crack cocaine.
Discussion
A. Stop and Frisk
In the instant case the defendant claims that the initial stop and frisk by the detectives was unlawful because it lacked probable cause. According to the venerable case of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed 2d 889 (1968), “the frisk of a person is constitutionally permissible if the arrest officer can point to specific, articulable facts that warrant a reasonable suspicion that the particular individual might be armed and a potential threat to the safety of the officer or others." Commonwealth v. Wing Ng, 420 Mass. 236, 237 (1995).
In reviewing the evidence presented to this Court, Detectives Burokas and Petralia clearly had ample “specific and articulable facts” to justify the detention and frisk of the defendant for weapons. The defendant was in a known drug distribution area and his actions were consistent with others (arrested the previous Friday) involved in this cocaine distribution ring. Commonwealth v. Silva, 366 Mass. 402, 407 (1974), Commonwealth v. Moses, 408 Mass. 136, 140 (1990). For example, the defendant attempted to communicate with occupants of the empty residential first-floor apartment by knocking on the exact same kitchen window in the same manner as others arrested in the sting operation. After asking to be let into the building, the defendant moved towards the door which gives access directly into the kitchen which was known for drug distribution. Once confronted with Detective Petralia’s presence he turned to flee and reached for a concealed object in the small of his back. Commonwealth v. Wren, 391 Mass. 705, 708 n.2 (1984). The detectives were extremely aware that weapons are often typically concealed in that location on a person. At this time, based on their narcotics training and experience, the officers were justified in having a strong suspicion that the defendant was involved in narcotic-related activities and were also appropriately concerned for their safety. The detectives stopped the defendant so that he was unable to retrieve what was concealed in his lower back and then frisked him.
The search that followed this valid stop was limited to withdrawing the object that created the suspicious bulge. Withdrawing the concealed package felt while frisking the defendant for weapons is considered within the ambit of reasonable protective precautions permitted by Terry. If the stop was justified, the officers could take reasonable precautions for their own protection. Commonwealth v. Robbins, 407 Mass. 147, 151 (1990). The case of Commonwealth v. Johnson, 413 Mass. 598, 600-02 (1992), is particularly instruc *345 tive. In that case the defendant, upon being stopped after a high speed chase, was observed reaching for the waist area of his pants. A Terry pat and frisk revealed a plastic bag containing a lump of white powder. “In these circumstances, it was not necessary for the judge to have specifically found that the officer believed that the bulge inside the defendant’s pants was a weapon. ‘It was necessary for the protection of [the officer] and others to take swift measures to discover the true facts and neutralize the threat of harm if it materialized.’ ” Id. at 601, quoting, Terry v. Ohio, supra at 30. As in the Johnson case, the detectives here did not conduct “a general exploratory search,” but “sought only to ascertain what the object was that he had seen the defendant hiding inside his pants.” Id. Given the circumstances faced by the detectives in this case, they were warranted for their own protection in finding what the defendant had concealed in the small of his back. Police officers are “not required to gamble with their personal safety.” Commonwealth v. Robbins, supra at 152. Thus, the seizure of the bag of crack cocaine was permissible under a Terry-style analysis.
B. A Search Incident to Arrest
If this is too expansive an interpretation of the legitimate scope of a Terry pat and frisk, the seizure of the cocaine was also justified as a search incident to arrest. “The purpose of the limited [Terry] search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence.” Adams v. Williams, 407 U.S. 143, 146 (1972). Nevertheless, when a legitimate pat down provides probable cause to arrest an individual, a further search of the person incident to the arrest is appropriate. Thus, if the valid pat down for a weapon (together with the other evidence already known to the officers) produced probable cause for the officers to believe that the defendant possessed contraband, the seizure and search of the contraband was valid. Commonwealth v. Johnson, supra at 602. As the United States Supreme Court has stated: “police officers, at least under certain circumstances, may seize contraband detected during the lawful execution of a Terry search.” Minnesota v. Dickerson, 113 S.Ct. 2130, 2136 (1993). See Michigan v. Long, 463 U.S. 1032, 1050 (1993) (contraband discovered during protective frisk of a vehicle). I find that the officers, based on the totality of the circumstances, had probable cause to arrest the defendant (and search incident to the arrest) once Detective Burokas felt the uniquely feeling and shaped object under the defendant’s shirt. Based on: (1) his prior experience with this precise locale as a crack cocaine distribution center; (2) his long experience with the packaging of crack cocaine in separate ping-pong ball sized packages wrapped into a larger consolidated package; (3) the fact that crack cocaine distribution was ongoing at the apartment that night; and (4) the defendant’s actions attempting to gain access to the apartment and in fleeing when identifying the police, probable cause existed to arrest the defendant for possession of crack cocaine.[1]
Various courts recently have treated similar scenarios as applications of the so-called “plain feel” doctrine. This doctrine, not yet officially sanctioned in Massachusetts, appears to be simply a gloss on the well established law of searches incident to arrest. Both sides argue that this case inevitably involves the “plain feel” doctrine. As is apparent, I disagree. Nevertheless, the newer terminology of the “plain feel" doctrine produces the same result.
C. The “Plain Feel” Doctrine
In the United States Supreme Court case of Minnesota v. Dickerson, 508 U.S., 113 S.Ct. 2130, 2136, 124 L.Ed.2d 334 (1993), the Court states that “If a police officer lawfully pats down a suspect’s outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect’s privacy beyond that already authorized by the officer’s search for weapons, if the object is contraband, its warrantless seizure would be justified by the same practical consideration that inhere in the plain view context.” Several other jurisdictions which follow the plain view doctrine have accepted the court’s decision in regards to “plain feel” as a logical extension. People v. Mitchell, 650 N.E. 2d 1014 (Ill. 1995); Commonwealth v. Johnson, 631 A.2d 1335 (PA 1993); State v. Wilson, 437 S.E. 2d 387 (N.C. App. 1993); State v. Jones, 653 A.2d 1040, (Md. App. 1995).
In accepting the Court’s analysis in Dickerson the question arises whether the object felt by Detective Burokas was “immediately apparent” to him without further investigation. In answering this question the Court must determine, in light of all the circumstances, Detective Burokas’ ability to detect such contraband. Both Detective Pertralia and Detective Burokas are highly trained professionals in both police investigation and drug trafficking. Detective Burokas had extensive experience in examining the packaging of crack cocaine in the Lawrence area. When the concealed object was felt by Detective Burokas, he said it was like several small ping-pong ball sized packages put together in the size of a softball. He knew this was consistent with the manner in which crack cocaine was typically packaged. As earlier discussed, his insight coupled with his presence in a known drug distribution area and the suspicious behavior of the defendant provided probable cause to believe that the defendant was indeed carrying a large quantity of cocaine and therefore probable cause to arrest.
Detective Burokas in this case knew precisely what he was encountering as soon as he placed his hand on the bulge under the defendant’s clothing. “When objects have a distinctive and consistent shape that an officer has been trained to detect and that officer has previously experienced detecting such objects, his *346 tactile perception can provide him with the same recognition that his sight would have provided.” Mitchell, 650 N.E.2d 1014, 1022. The issue depends on the particular officer’s experience and the unique object felt in the particular case. In this case Detective Burokas, a very experienced officer, feels the very distinctive packaging of crack cocaine. These facts lead to the inevitable conclusion that the officer’s tactile perception was as certain as his visual perception would have been. Thus, even using the arguably more chic language of the “plain feel” analysis, the search was valid.
ORDER
For the stated reasons, the defendant’s Motion to Suppress is DENIED.

The fact that this search apparently occurred before the formal arrest of tire defendant is not important “as long as probable cause [to arrestl existed independent of the results of the search.” Commonwealth v. Johnson, supra at 602.