COMMONWEALTH *vs.* JOHN DEDOMINICIS.

No. 96-P-351.

Middlesex. September 24, 1996. - January 22, 1997.

Present: DREBEN, GILLERMAN, & FLANNERY, JJ.

*Search and Seizure,* Protective frisk. *Judge. Evidence,* Demonstration.

A Superior Court judge inappropriately participated in a pat-frisk demonstration at a hearing on a motion to suppress evidence and where the judge's findings apart from the demonstration supported the conclusion that the search was reasonable, the motion to suppress should have been denied. [78-81]

INDICTMENTS found and returned in the Superior Court Department on June 29, 1994.

A pretrial motion to suppress evidence was heard by *Hiller B. Zobel,* J.

An application for leave to file an interlocutory appeal was allowed by *John M. Greaney,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

*Melissa J. Weisgold,* Assistant District Attorney, for the Commonwealth.

*Benjamin H. Keehn,* Committee for Public Counsel Services, for the defendant.

DREBEN, J. This is an appeal by the Commonwealth from the allowance of the defendant's motion to suppress more than 200 five-dollar bills found in the course of a pat-frisk of the defendant. The motion judge found that the police officer reasonably was in apprehension of danger sufficient to make a pat frisk, but, based on the judge's own "feel" of the wad of money taken from the defendant, concluded that the officer was not constitutionally permitted to examine what the defendant had concealed in his pants pocket. We reverse.

The following facts were found by the motion judge. After

a robbery of a Malden supermarket by masked intruders, Officer James O'Brien received a radio transmission that three suspects were heading toward Lodgen Court and that at least one of them was armed. Arriving at Lodgen Court in his cruiser, O'Brien saw a man, subsequently identified as the defendant, walking in one direction and then in the other. Despite the mildness of the weather, he was sweating profusely, appeared nervous, and, when asked by O'Brien what he was doing, gave an explanation which did not accord with the geography of the neighborhood. O'Brien suspected that the defendant had participated in the robbery, and, seeing a bulge in the defendant's pants, was reasonably concerned for his own safety. Shrubbery prevented O'Brien from seeing whether any other persons were on the street, he knew that at least three people had been involved in the robbery, and he knew that one of them had a weapon. O'Brien was justified, the judge ruled, in making a *Terry* stop (*Terry* v. *Ohio*, 392 U.S. 1 [1968]) and in conducting a pat-frisk of the defendant. The defendant does not contend otherwise.

The additional inquiry required in stop and frisk cases, see *Commonwealth* v. *Mercado*, 422 Mass. 367, 369, 371-372 (1996), is whether the scope of the search was within constitutional limits. While patting down the defendant, O'Brien felt an object which he characterized as "hard."[1] He then inserted his thumb in the defendant's pocket, stretching it open to ascertain its contents. Recognizing the object to be a wad of bills, O'Brien called for a backup and a witness to the robbery. After a representative from the store stated that the defendant had the same build as the robber and that the money taken was mostly ones and fives, O'Brien concluded that the bills were the proceeds of the robbery and arrested the defendant. He then took the money out of the defendant's pocket and saw that it was a stack of 200 five-dollar bills, folded over.

At the hearing on the motion to suppress, after O'Brien, on cross-examination at defense counsel's request, was asked to put the wad of bills in the defendant's pocket, the judge, at counsel's request, also felt the money. In his written findings allowing the motion to suppress, the judge stated:

---

[1] O'Brien stated that he did not know what the object was. Its "contour or mass [did not make] its identity immediately apparent" so as to justify its seizure as contraband. *Minnesota* v. *Dickerson*, 508 U.S. 366, 375 (1993).

"In the area of the right front pocket, O'Brien ran his hand over the bulge. Although he characterized it as 'hard', I do not credit the testimony. I find that the bulge was not hard, and was in any event palpably not a weapon. In making this finding, I have in mind that at the request of counsel, the contents of Defendant's pocket at the time of the frisk were placed in the pocket of the clothes he was wearing during the hearing on this motion, and I was asked to run my hand over the outside of the pocket, the same way O'Brien did. Although one could not tell exactly what the contents were, they were unmistakably softer than a pistol, revolver, knife, black-jack, or anything else that a reasonable person would believe to be a weapon or source of potential bodily harm."

The judge went on to conclude that "[o]nce O'Brien knew or reasonably should have known that he was feeling something other than a weapon, any justification for intrusion into the pocket ended." *Commonwealth* v. *Ferguson*, 410 Mass. 611, 614-615 (1991). See 4 LaFave, Search & Seizure § 9.5(c) (3d ed. 1996).

The Commonwealth argues that the judge erred because he based his finding on his own "frisk" under circumstances which were distinguishable from the actual pat-down of the defendant conducted by the officer.

The credibility of Officer O'Brien is not at issue in this case. Although the judge stated that he did not "credit the testimony" that the bulge when felt was "hard," a reading of the transcript of the hearing on the motion to suppress shows that the judge did not mean that he thought O'Brien was not truthful. To the contrary, on two separate occasions the judge referred to O'Brien's testimony as truthful and went so far as to point out that "Officer O'Brien was very, very candid, and I want to put that right on the record now, that is going to be part of my finding. He was a very candid, and honest, and truthful witness."[2]

Having found the officer credible, the judge was not war-

---

[2] In his written findings, the judge stated, "One cannot overemphasize that O'Brien's good faith is not in issue . . . . The record does not permit the slightest doubt that throughout the episode he acted honestly and fairly toward Defendant."

ranted in considering his own "feel" of the wad of money in the defendant's pocket to counter the other evidence before him. Although there was no objection by the Commonwealth, we conclude that the judge should, on his own, have refused the defendant's request that he feel the bills. Cf. *Schaffner* v. *Chicago & N.W. Transp. Co.,* 129 Ill. 2d 1, 29 (1989). The question to·be decided was whether the search for a weapon was reasonable in the circumstances confronting the officer in the field, *Terry* v. *Ohio,* 392 U.S at 27, *Commonwealth* v. *Robbins,* 407 Mass. 147, 151 (1990), not those facing the judge in the tranquility of the courtroom. Wholly apart from the fact that the judge knew beforehand that the bulge was a bundle of bills, and apart from questions such as whether the defendant was standing in the same position, or whether the difference in his clothing and depth of his pockets caused the wad to rest against a different part of his body (bone or flesh) or whether the money had been separated (as stolen, it was in tight wads), two important considerations were absent from the judge's courtroom examination. First, to all the facts confronting him O'Brien was entitled to apply his nineteen years of police experience, *Commonwealth* v. *Johnson,* 413 Mass. 598, 601 (1992), and second, he "had no more than a few seconds in which to assess the extent, if any, of the danger, and to ascertain the most effective and least intrusive means of protecting himself." *Ibid.* quoting from *Commonwealth* v. *Summerlin,* 393 Mass. 127, 129-130 (1984), cert. denied, 469 U.S. 1193 (1985).

Not only were the conditions of the pat-down significantly different in the courtroom than in the field,[3] but, perhaps even more important, the use of the fact finder in a demonstration of evidence poses a serious problem. It "may have the effect of converting the participant into a witness for the party conducting the test." *Schaffner* v. *Chicago & N.W. Transp. Co.,* 129 Ill. 2d at 30. As pointed out in that case where a juror took part in a demonstration, "The juror may acquire knowledge that is not directly available to the other

---

[3]Cf. *Commonwealth* v. *Gonzalez,* 39 Mass. App. Ct. 472, 476 (1995), where this court rejected a finding by the judge based on her own observation of a building for which a search warrant had issued and pointed to the different circumstances of the officers' observation. Had the police ascertained the exact entrance to the apartment by going to the premises before applying for the warrant, they might have risked disclosure of their surveillance and jeopardized the investigation.

jurors, *and opposing counsel is unable to cross-examine him on his experience.* These concerns militate against the involvement of jurors in evidentiary demonstrations." (Emphasis supplied.) *Ibid.* We consider that permitting the judge to participate in a demonstration where he is the fact finder, particularly where the question before him, such as hardness, involves subjective elements, is equally improper.

Without the inappropriate evidence from the judge's "feel," there was no evidence supporting the judge's conclusion that Officer O'Brien knew or should reasonably have known that what he felt was not a weapon which could be used against him. We reach this conclusion because of the judge's statements as to the credibility of O'Brien, and because of other evidence before the judge. O'Brien described the money when he took it out as "rolled into a ball, folded in half." He consistently stated that the package was hard, that he thought it "could have been a weapon . . . something rolled or wrapped in something." Other evidence adduced at the hearing was consistent with a firm object. The money stolen from the supermarket included two packages each containing one hundred five dollar bills and each was one to one and one-half inches thick and was wrapped tightly by the bank.

In considering the reasonableness of the search, the facts of *Commonwealth* v. *Johnson,* 413 Mass. at 600-602, are instructive. After frisking the defendant in that case, the police withdrew from the defendant's pants a plastic bag containing a lump of white powder and six small paper folds. The defendant argued that the Commonwealth had failed to show that the officer believed the package he had felt was a weapon. The court held that the dangerous circumstances facing the officer, his police experience, and the need for taking "swift measures to discover the true facts and neutralize the threat of harm if it materialized," *Terry* v. *Ohio, supra* at 30, permitted the police to find out what the defendant had concealed inside his pants. "In these circumstances it was not necessary for the judge to have specifically found that the officer believed that the bulge inside the defendant's pants was a weapon." *Commonwealth* v. *Johnson,* 413 Mass. at 601. See also *Commonwealth* v. *Robbins,* 407 Mass. at 152, where the Supreme Judicial Court rejected the finding of the motion judge that at the time of the search the danger had ceased, saying, "The trooper [was] not required to gamble with [his] personal safety."

Having determined that without the evidence occasioned by the judge's participation the ultimate finding cannot stand, see *Commonwealth* v. *Bookman*, 386 Mass. 657, 661, n.6 (1982); *Commonwealth* v. *Thinh Van Cao*, 419 Mass. 383, 384, cert. denied, 515 U.S. 1146 (1995), we conclude that the evidence should not have been suppressed. The order suppressing the evidence is reversed, and the case is remanded to the Superior Court for trial.

*So ordered.*