NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-143

COMMONWEALTH

vs.

SAKUNTHEAR DANY.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the District Court, the defendant was convicted of three counts of distribution of fentanyl, in violation of G. L. c. 94C, § 32 (a); and one count of possession of cocaine, in violation of G. L. c. 94C, § 32A (a).  On appeal, the defendant argues that the judge erred by admitting text messages allegedly exchanged between him and an undercover police officer and audio-visual recordings of three controlled drug purchases in evidence.  He also argues that the judge erred by permitting the Commonwealth's expert to testify about the general characteristics of a drug user.  We affirm.

Background.  In May 2021, the Massachusetts State police and the Lynn police department commenced an investigation into the illegal distribution of fentanyl in Lynn.  As a part of the investigation, on May 12, 2021, a State police trooper working

undercover sent a text message to a cell phone ending in 0629 and arranged to purchase $100 worth of fentanyl. In the text message exchange that followed, the trooper was initially directed to Flint Street, then redirected to Ray Street. The defendant arrived at Ray Street shortly after the trooper. He entered the front seat of the trooper's car and sold him a bag of fentanyl for $100. A few days later, on May 18, 2021, the trooper sent another text message to the same cell phone number and arranged to purchase $300 worth of fentanyl. The trooper was directed to Flint Street by a return text message. The defendant was seen leaving a building on Flint Street and getting into the trooper's car. In the car, the defendant gave the trooper three "clear plastic twists" of fentanyl in exchange for $300.

On May 24, 2021, the trooper texted the same cell phone number ending in 0629 to arrange to purchase $300 worth of fentanyl. The cell phone user directed the trooper to Light Street and, at 3:27 P.M., texted that he was five minutes away. At 3:30 P.M., the police saw a Honda Accord approach that location and park. The defendant exited the rear seat of the Honda Accord and entered the trooper's car. The trooper gave him the money, which consisted of premarked bills, and the defendant gave the trooper one clear plastic bag containing fentanyl.

2

After the defendant exited the trooper's car, other police officers placed him under arrest. The officers seized from the defendant the $300 the trooper had paid and a plastic bag of cocaine. The driver of the Honda Accord that the defendant had arrived in attempted to drive away, but officers stopped the vehicle and ordered the driver and a passenger out. After the passenger exited the vehicle, she returned to it and "reached in the back and retrieved a cell phone," which the officers seized. The officers then placed a call to the cell phone number ending in 0629, and the phone taken from the backseat rang and displayed the trooper's first name and the phone number associated with the cell phone the trooper used to arrange the controlled buys.

All three drug transactions between the defendant and the trooper were recorded on what the trooper described as "a recording device on a[n] undercover cell phone." The device captured both audio and video recordings.

Discussion. 1. Admission of the text messages. The defendant filed a motion in limine to exclude the text messages, arguing that there was insufficient evidence to establish that he was the person who authored the messages sent from the 0629 number. The judge denied the motion. At trial, the defendant objected when the text messages were entered into evidence. Accordingly, we review to determine whether the trial judge

3

abused his discretion in admitting the text messages and, if so, whether the defendant was prejudiced thereby. Commonwealth v. Woods, 90 Mass. App. Ct. 271, 275 (2016), citing Commonwealth v. Rosario, 460 Mass. 181, 193 (2011).

Before admitting an electronic communication in evidence, a judge must determine whether sufficient evidence exists "for a reasonable jury to find by a preponderance of the evidence that the defendant authored" the communication. Commonwealth v. Purdy, 459 Mass. 442, 447 (2011).[1] In making this determination, a judge "may look to 'confirming circumstances' that would allow a reasonable jury to conclude that this evidence is what its proponent claims it to be" (citation omitted). Purdy, supra at 449. See Mass. G. Evid. § 901(b)(11) (2023).

Here, there were sufficient confirming circumstances to allow a reasonable jury to find by a preponderance of the evidence that the defendant was the author of the text messages. Those circumstances include the numerous text messages between the trooper and the person associated with the 0629 phone number in negotiating price, quantity, time, and location in advance of

---

[1] On appeal, the defendant incorrectly asserts that the beyond a reasonable doubt standard applies. See Commonwealth v. McMann, 97 Mass. App. Ct. 558, 559-560 (2020) (distinguishing "the lower preponderance of the evidence standard that applies to authentication" from "higher burden of proving beyond a reasonable doubt that the defendant was the person who wrote or sent the message to the victim" to prove element of offense for violating abuse prevention order).

4

three separate drug purchases; the defendant's arrival at Ray Street with the agreed-on quantity of fentanyl soon after a text message from the same phone that directed the trooper there for the first drug purchase on May 12, 2021; the defendant's arrival at Light Street after a telephone call from the same phone directed the trooper there for the third drug purchase and minutes after a text message from the phone stated he was five minutes away on May 24, 2021; and the recovery of the 0629 cell phone from the backseat of the Honda Accord, where the defendant exited from before getting into the trooper's car that same day. Because these facts constituted sufficient confirming circumstances to authenticate the text messages as having been sent by the defendant, the judge did not abuse his discretion in admitting the text messages as evidence. See Commonwealth v. Meola, 95 Mass. App. Ct. 303, 310-315 (2019).

2. The testimony of the drug distribution expert. The defendant argues that the judge improperly allowed the prosecutor to elicit character evidence and negative profile testimony from a police sergeant who did not participate in the controlled buys, but rather testified as a drug distribution expert. Although the Commonwealth argues the issue is not preserved because the defendant objected on grounds other than those argued on appeal, we disagree. The defendant moved to exclude the sergeant's testimony in a motion in limine prior to

5

trial, and then objected when the sergeant testified at trial. Those objections are consistent with the arguments the defendant has made here. Accordingly, we consider whether the judge's decision to admit the testimony involved "an abuse of discretion or other error of law," Commonwealth v. Grissett, 66 Mass. App. Ct. 454, 457 (2006), and, if so, whether that error was prejudicial, see Commonwealth v. Cruz, 445 Mass. 589, 591 (2005).

Trial judges have "broad discretion to allow the use of narcotics investigators as experts in drug cases." Commonwealth v. Miranda, 441 Mass. 783, 793 (2004), citing Commonwealth v. Johnson, 413 Mass. 598, 604 (1992). However, while expert opinion testimony is often grounded in the facts of the case at hand, care must be taken such that the expert does "not directly express his views on the defendant's guilt." Commonwealth v. Tanner, 45 Mass. App. Ct. 576, 579 (1998). "[A]n opinion by a qualified witness on the subject of drug possession with intent to distribute, which speaks to the point that specific conduct, or the presence of certain facts or circumstances, as grounded in the trial evidence, would be 'consistent with' a drug transaction, has been deemed proper." Grissett, 66 Mass. App. Ct. at 458, quoting Commonwealth v. Lopez, 55 Mass. App. Ct. 741, 746 (2002). On the other hand, testimony that seeks to demonstrate that a defendant matched the profile of a type of

6

criminal is inadmissible because it is irrelevant and unfairly prejudicial. See Commonwealth v. Day, 409 Mass. 719, 722-723 (1991). Similarly, negative profiling evidence, which purports to demonstrate that because a "defendant [does] not match the physical characteristics of a drug addict, he must be a drug dealer[,]" is also inadmissible. Commonwealth v. Horne, 476 Mass. 222, 227 (2017).

Here, the defendant argues that it was error to allow the police sergeant to testify that the average dose of fentanyl by a typical user is between five milligrams and an eighth of a gram; that to ingest fentanyl, a typical user uses a straw to snort it, or a spoon, hypodermic needle, syringe and "something to tie off the arm" to inject it; that users typically ingest methamphetamine by smoking, snorting, or taking it in pill form; and that methamphetamine can be produced as a crystallized-looking substance or "pressed into pills to look like a pharmaceutical." The defendant further argues that it was error to allow a hypothetical question that mirrored certain facts at issue in the defendant's case.

The judge did not abuse his discretion or commit prejudicial error in allowing this testimony. The sergeant's testimony about the average dose and tools used for fentanyl was not inadmissible profile testimony because it did not describe the physical characteristics of an individual, compare the

7

defendant to stereotypes, or match the defendant to a particular profile, but instead focused on facts that are relevant to the crime of trafficking. Even if the testimony about methamphetamine was admitted in error, it was not prejudicial because the defendant was acquitted of the charge of possession with intent to distribute a class B substance (methamphetamine). Finally, the judge sustained the defendant's objection to the hypothetical question. In any event, the question would have been proper because it was "based on evidence already admitted in trial" and did not "require the witness to comment on the guilt or innocence of the defendant." Commonwealth v. Dancy, 75 Mass. App. Ct. 175, 184 (2009). The judge also sustained defense counsel's objections to several other questions that came closer to eliciting views about the defendant's guilt. Accordingly, the sergeant's testimony was admissible, and we discern no prejudicial error in the judge's decisions.

3. The admission of the audio-visual recordings. The Commonwealth filed a motion in limine to admit the audio-visual recordings of the three drug purchases by the undercover trooper. The defendant filed a motion in limine to exclude these recordings. The judge allowed the Commonwealth's motion, and the recordings were admitted in evidence.

While this appeal was pending, this court decided Commonwealth v. Du, 103 Mass. App. Ct. 469, 469-482 (2023),

8

which concluded that an undercover police officer's surreptitious audio-visual recording of drug purchases violated the wiretap statute, G. L. c. 272, § 99, and required that the recordings be suppressed.  That decision is now on further appellate review before the Supreme Judicial Court.  Here, the defendant filed a motion for leave to file a supplemental brief to challenge the admission of the audio-visual recordings in this case under Du, supra at 469-470, which was allowed.

The wiretap statute generally proscribes "[t]he secret transmission or recording of oral communications without the consent of all parties."  Commonwealth v. Blood, 400 Mass. 61, 66 (1987).  "Generally such recordings are not admissible in criminal trials for the Commonwealth."  Commonwealth v. Gonzalez, 426 Mass. 313, 315 (1997).  Here, the Commonwealth concedes that, under Du, 103 Mass. App. Ct. at 480-481, the defendant "would have been entitled to [the recordings'] exclusion" had he moved to exclude their admission under the wiretap statute.  However, because the defendant did not cite the wiretap statute as a ground for excluding the recording, but rather objected to their admission on the grounds of hearsay, unfair prejudice, and cumulative evidence, the Commonwealth claims that the substantial risk of a miscarriage of justice standard applies, and that standard is not met here.  We agree.

9

Where a defendant objected to evidence on specific grounds at trial, and raises separate grounds for the objection on appeal, we review to determine whether the admission of the evidence created a substantial risk of a miscarriage of justice. See Commonwealth v. Colon, 49 Mass. App. Ct. 289, 291 (2000). Under that standard, we "consider the strength of the Commonwealth's case against the defendant (without consideration of any evidence erroneously admitted), the nature of the error, whether the error is 'sufficiently significant in the context of the trial to make plausible an inference that the [jury's] result might have been otherwise but for the error,' and whether it can be inferred 'from the record that counsel's failure to object was not simply a reasonable tactical decision'" (citation omitted). Commonwealth v. Alphas, 430 Mass. 8, 13 (1999). Central to this analysis is whether there is serious doubt that the defendant's guilt has been fairly adjudicated. See Commonwealth v. Azar, 435 Mass. 675, 687 (2002).

We have no such doubt here. The Commonwealth's case was strong, and the audio-visual recordings of the controlled buys were not necessary to prove its case. The State trooper testified about the three different transactions in which he purchased fentanyl from the defendant. Text messages documented the negotiations between the trooper and the defendant as to price, quantity, time, and location for the controlled buys.

Another officer testified about his personal surveillance of the transactions.  Chemical analysis indicated that the substances purchased by the trooper were fentanyl.  Therefore, we perceive no substantial risk of a miscarriage of justice stemming from the admission of the audio-visual recordings into evidence.

<u>Judgments affirmed</u>.

By the Court (Vuono, Massing & Toone, JJ.[2]),

Assistant Clerk

Entered:  April 11, 2024.

---

[2] The panelists are listed in order of seniority.