COMMONWEALTH *vs.* CARLO CLERMY.

Plymouth. October 2, 1995. - November 10, 1995.

Present: LIACOS, C.J., ABRAMS, LYNCH, GREANEY, & FRIED, JJ.

*Search and Seizure,* Arrest, Container, Probable cause. *Constitutional Law,* Search and seizure, Probable cause. *Arrest. Controlled Substances. Practice, Criminal,* Required finding, Lesser included offense. *Probable Cause.*

Police officers were authorized by G. L. c. 276, § 1, to conduct a contemporaneous weapons search of a defendant whom they had arrested pursuant to a warrant. [328-329]

Police officers properly opened a prescription bottle removed from a defendant in a search incident to his arrest pursuant to a warrant and properly seized its contents, crack cocaine, where the officers had ample probable cause to arrest the defendant for a narcotics violation before they opened the bottle. [329-331]

At the trial of an indictment for possession of cocaine with intent to distribute, the Commonwealth presented sufficient evidence to warrant a finding that the defendant possessed cocaine for more than personal use. [331]

A conviction of possession of cocaine was duplicative of a conviction of possession of the same cocaine with intent to distribute. [331-332]

COMPLAINTS received and sworn to in the Brockton Division of the District Court Department on July 31, 1991.

On appeal to the jury session of the Wareham Division, a pretrial motion to suppress evidence was heard by *Joseph D. Clancy,* J., and the cases were heard by *Richard P. Kelleher,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*David P. Sorrenti* for the defendant.

*Mary E. Mullaney,* Assistant District Attorney, for the Commonwealth.

GREANEY, J. After a jury-waived trial in the District Court, the defendant, Carlo Clermy, was found guilty of possession of cocaine, G. L. c. 94C, § 34 (1994 ed.), and possession of cocaine with intent to distribute, G. L. c. 94C, § 32A (1994 ed.). The defendant argues that it was error to deny (1) his motion to suppress cocaine seized from him at the time of arrest; (2) his motion for a required finding of not guilty; and (3) his motion to dismiss the complaint for possession of cocaine as duplicative of the complaint for possession of cocaine with intent to distribute. The Appeals Court upheld the orders denying the defendant's motions to suppress and for a required finding of not guilty. See *Commonwealth* v. *Clermy*, 37 Mass. App. Ct. 774 (1995). The Appeals Court also concluded that there was impermissible duplication in the two convictions and ordered resentencing. We granted the defendant's application for further appellate review. We conclude that the defendant's motion to suppress was properly denied, although our reasoning differs somewhat from that of the trial judge. We agree with the Appeals Court's determination of the other two issues.

1. The judge, who conducted an evidentiary hearing on the defendant's motion to suppress, made written findings of fact and conclusions of law, which, with minor additions from the testimony, can be recounted as follows. The defendant was arrested on an outstanding motor vehicle default warrant by two State police troopers who were operating undercover. The troopers were engaged in work involving narcotics and the apprehension of violent fugitives. The outstanding warrant on the defendant had come to their attention when they arrested the defendant's brother about two weeks before the defendant's arrest. The troopers first observed the defendant sitting on the steps of a boarded-up building which had been condemned by the city of Brockton and was known to police as a "crack house." After circling the block and confirming from a photograph in their possession that the defendant was Carlo Clermy, the troopers pulled over and beckoned to the defendant. The defendant, who appeared nervous, agreed that he was Carlo Clermy. The troopers placed him under

arrest on the outstanding warrant and conducted a cursory pat frisk which uncovered an electronic beeper (a paging device), and about sixty dollars in cash. The troopers placed the defendant, with his hands cuffed behind his back, in the rear of the automobile. One of the troopers then conducted a second more thorough search of the defendant during which the trooper felt a hard object "down between [the defendant's] legs," in the area of his genitals. The trooper reached inside the defendant's pants and retrieved a three-inch opaque brown plastic bottle for prescription medicine, covered with a white cap. Because the trooper was not able to see inside the bottle, he removed the cap and discovered twenty-five individually wrapped pieces of a hard white material which the trooper believed to be crack cocaine. The defendant was informed that he also would be charged with possession of a controlled substance with intent to distribute.

The judge expressly found that the troopers conducted the search that yielded the prescription bottle out of concern for their safety. The judge described the situation facing the police in the following terms: "Even although the defendant's hands were handcuffed behind his back the officers still considered him a security risk as far as their safety was concerned. Based on their own personal experience, they had several prisoners who were able to get their hands in front of themselves and present a danger to the officers. In addition, [the officers' automobile] was not a standard police cruiser and therefore had no protective screen between the front and rear seats. Furthermore, the officers knew that they were in a very high crime area based on the fact that they had made eight serious drug arrests at [the] address [where the defendant was arrested] in addition to an arrest of a violent fugitive."

Based on his findings, the judge reached the following conclusion: "Under the totality of the circumstances, I find that the officers acted properly in conducting the second search considering the high crime area, the proximity to a known . crack house, the officers' personal knowledge of the criminal activity in this area and the fact the unmarked vehicle did

not provide the normal security of a marked police cruiser. The safety of the officers dictated that a thorough search of the defendant be made prior to his being transported to the police station for 'booking' on the outstanding warrant plus the new drug charges."[1]

We consider the legality of the troopers' conduct under the familiar standard that the judge's findings of fact are accepted in the absence of a clear error (the findings here are all warranted on the evidence heard by the judge), and we accord deference to the judge's legal conclusions, keeping in mind that issues of constitutional dimension are reserved to the reviewing court for final decision. *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 743 (1990). *Commonwealth* v. *Doucette*, 391 Mass. 443, 447 (1984).

The search which uncovered the prescription bottle was constitutionally valid. Since the police had made a valid arrest, they were authorized by G. L. c. 276, § 1 (1994 ed.), in conformity with governing Federal and State constitutional principles, to conduct a contemporaneous search of the defendant for the purpose (as the statute put it) of "removing any weapons that the arrestee might use to resist arrest or effect his escape." See *Commonwealth* v. *Santiago*, 410 Mass. 737, 743 (1991). The troopers' initial search of the defendant was very brief and intended to permit the troopers to place the handcuffs on the defendant. Once the defendant was in the back seat of the cruiser, one of the troopers conducted a "more detailed pat frisk to make sure there [were] no weapons down between his legs." As the judge noted, the troopers were entitled to ensure that the defendant was not carrying a weapon. That he was in the vehicle and in handcuffs did not guarantee their safety. The troopers knew from personal experience that arrestees in handcuffs had been able to get their hands in front of themselves, and, because the

---

[1]The judge also indicated that the seizure of the drugs might be validated by the so-called "inevitable discovery" rule. See *Commonwealth* v. *O'Connor*, 406 Mass. 112 (1989). We need not examine this point because we conclude that the search was lawful as one conducted incident to a valid arrest to discover whether the defendant possessed a weapon.

troopers were in an unmarked cruiser, the defendant would not be separated from them by the usual protective screening. The area where the defendant was arrested was one considered by the troopers to be dangerous. In addition, the troopers reasonably could have believed that the hard object in the defendant's groin area might be a weapon. "[I]t was necessary for the protection of [the officer] and others to take swift measures to discover the true facts and neutralize the threat of harm [before] it materialized." *Commonwealth* v. *Johnson*, 413 Mass. 598, 601 (1992), quoting *Terry* v. *Ohio*, 392 U.S. 1, 30 (1968). The words "removing any weapons" used in G. L. c. 276, § 1, clearly permit, incident to arrest, a search for and visual examination of a concealed object that might be amenable to use as a weapon.

The judge did not address specifically the contention that, even if the troopers were entitled for reasons of exigency to remove the prescription bottle from the defendant's possession, they were not entitled to open the bottle (a closed container) once it was securely in their possession.[2] We agree that concerns for safety could not justify opening the container once the troopers had taken it from the defendant. Even if it is assumed that the prescription bottle might have contained a weapon, "the risk of the defendant successfully repossessing the [bottle] was minimal. We prefer not to rely on the existence of a tenuous or perhaps even imaginary exigency to uphold the search." *Commonwealth* v. *Madera*, 402 Mass. 156, 160 (1988).

Although we do not rest our conclusion on a ground on which the judge relied, we reach the same result for different reasons. See *Commonwealth* v. *Bennett*, 414 Mass. 269, 271

---

[2]Applicable Federal constitutional principles would not preclude the troopers from opening a container seized in a search incident to a lawful arrest. See *Commonwealth* v. *Madera*, 402 Mass. 156, 158 (1988), and cases cited. The defendant relies on art. 14 of the Declaration of Rights of the Constitution of the Commonwealth and the provisions of G. L. c. 276, § 1 (1994 ed.). "[W]e have noted that art. 14 might provide greater protection against search and seizure than the Fourth Amendment does." *Commonwealth* v. *Madera, supra* at 160.

(1993). We concluded, in the *Madera* case, that art. 14 does not bar the search of a closed container seized from a defendant who has been lawfully arrested on probable cause when "there is also probable cause to believe that the [container] contains evidence of the crime for which the arrest was made." *Id.* at 161. See also G. L. c. 276, § 1 (search conducted incident to arrest may be made for purpose of seizing fruits and evidence of crime for which arrest has been made). The fact that a search may precede a formal arrest on a particular charge "is not important, 'as long as probable cause [to arrest] existed independent of the results of the search.'" *Commonwealth* v. *Johnson*, 413 Mass. 598, 602 (1992), quoting *Commonwealth* v. *Santiago*, 410 Mass. 737, 742 (1991). *Commonwealth* v. *Brillante*, 399 Mass. 152, 154-155 n.5 (1987). Nor is it of significance that there is an initial arrest for a separate offense, if a new ground arises for proffering charges against a defendant in the course of a lawful search conducted in connection with the initial arrest. See *Commonwealth* v. *Johnson, supra* at 602-603 & n.5; *Commonwealth* v. *Puleio*, 6 Mass. App. Ct. 909 (1978).

The troopers, who were experienced in the investigation of narcotics offenses, had ample probable cause to arrest the defendant for a narcotics violation before the prescription bottle was opened. The defendant had been picked up in an area in which the troopers recently had made a number of arrests for serious narcotics violations. See *Commonwealth* v. *Brillante, supra* at 155. He was first observed sitting on the steps of a building known to be used for the distribution and consumption of crack cocaine. He appeared apprehensive when approached by the troopers. The troopers' initial brief search of the defendant yielded a telephone beeper, an item often associated with the sale of controlled substances. See *Commonwealth* v. *Sabetti*, 411 Mass. 770, 779 (1992); *Commonwealth* v. *Parapar*, 404 Mass. 319, 320 (1989). Most significantly, the defendant had concealed a plastic container for prescription drugs between his legs. It is eminently reasonable to infer that a prescription bottle carried in this manner would contain contraband, and, most probably, a controlled

substance. See *Commonwealth* v. *Benitez*, 37 Mass. App. Ct. 722, 724 (1994) (concealment of plastic bag in groin area deemed "furtive" behavior); *Commonwealth* v. *Rivera*, 27 Mass. App. Ct. 41, 42 (1989) (defendant's attempt to conceal controlled substance in his groin area factor in probable cause determination). Because the troopers had probable cause to arrest the defendant for a narcotics violation before the bottle was opened, and did arrest him on such a charge, the opening of the container was a valid search incident to arrest. See *Commonwealth* v. *Johnson, supra*; *Commonwealth* v. *Madera, supra*. The defendant's motion to suppress properly was denied.

2. The Commonwealth presented sufficient evidence to warrant a finding that the defendant possessed cocaine for more than personal use. The Appeals Court discussed the evidence against the defendant as follows: "[T]he Commonwealth presented expert testimony suggesting that the many small packets of drugs found here likely had been prepared for distribution. See *Commonwealth* v. *Montanez*, 410 Mass. 290, 305-306 (1991); *Commonwealth* v. *Johnson*, 413 Mass. at 603-604. [The Appeals Court] and the Supreme Judicial Court frequently have endorsed the admission of such evidence, acknowledging that both the quantity of drugs recovered, as well as the manner in which it is packaged, are highly probative of a defendant's plans for its use. See *Commonwealth* v. *Johnson*, 410 Mass. 199, 202 (1991); *Commonwealth* v. *Sendele*, 18 Mass. App. Ct. 755, 758-759 (1984). Additionally, at the time of his arrest, the defendant also had a moderate amount of cash and a telephone beeper in his possession — both traditional accoutrements of the illegal drug trade. See *Commonwealth* v. *Parillo*, 29 Mass. App. Ct. 969, 970 (1990). In these circumstances, the fact finder was entitled to conclude that the intent element of § 32A had been established." *Commonwealth* v. *Clermy*, 37 Mass. App. Ct. 774, 778 (1995).

We also agree with the Appeals Court that the possession charge is a lesser included offense of the possession with intent to distribute charge and, as a result, the conviction on

the lesser charge — possession — must be vacated and re-sentencing ordered.

3. The judgment of conviction for possession of cocaine is vacated and the underlying complaint is to be dismissed. The judgment of conviction for possession of cocaine with intent to distribute is affirmed. The sentences are vacated, and the case is remanded for resentencing on the conviction for possession of cocaine with intent to distribute.

*So ordered.*