NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12699

COMMONWEALTH  vs.  ONAXIS BARRETO.


Suffolk.     September 6, 2019. - December 23, 2019.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, Cypher,
                  & Kafker, JJ.


Controlled Substances.  Constitutional Law, Search and seizure,
     Investigatory stop, Reasonable suspicion.  Search and
     Seizure, Motor vehicle, Reasonable suspicion.  Evidence,
     Anonymous statement, Corroborative evidence.  Practice,
     Criminal, Motion to suppress.




     Indictment found and returned in the Superior Court
Department on August 28, 2014.

     A pretrial motion suppress evidence was heard by Kenneth W.
Salinger, J., and a motion for reconsideration was considered by
him.

     An application for leave to prosecute an interlocutory
appeal was allowed by Hines, J., in the Supreme Judicial Court
for the county of Suffolk, and the appeal was reported by her to
the Appeals Court.  After review by the Appeals Court, the
Supreme Judicial Court granted leave to obtain further appellate
review.


     Eduardo Masferrer for the defendant.
     Erin D. Knight, Assistant District Attorney (Kathleen
Celio, Assistant District Attorney, also present) for the
Commonwealth.

BUDD, J.   The defendant, Onaxis Barreto, was charged with trafficking in cocaine in violation of G. L. c. 94C, § 32E (b), following a search of his motor vehicle.  The defendant filed a motion to suppress the evidence found in the vehicle, contending that the search took place after an unlawful exit order.  A judge in the Superior Court denied the defendant's motion following an evidentiary hearing, and the defendant filed an interlocutory appeal.  The Appeals Court reversed the denial in Commonwealth v. Barreto, 94 Mass. App. Ct. 337 (2018).  We granted the Commonwealth's application for further appellate review.

As did the Appeals Court, we conclude that based on the evidence presented at the suppression hearing, the exit order that precipitated the search of the vehicle was unjustified.  We therefore reverse the order of the motion judge denying the defendant's motion to suppress.

Background.  The motion judge made the following factual findings.  See Commonwealth v. Jones-Pannell, 472 Mass. 429, 431 (2015).  Police received a tip from an undisclosed source that a green Volvo station wagon containing a "large" amount of narcotics would be located near a particular intersection in the

Roxbury neighborhood of Boston.[1]  As a result, police set up surveillance near the intersection indicated by the tipster. Soon thereafter, officers observed a green Volvo station wagon approach the intersection, turn left without signaling, and park approximately fifty feet away.

The defendant, the vehicle's driver and sole occupant, leaned down and appeared to reach toward the floor of the passenger side of the vehicle.  An unidentified pedestrian approached the vehicle from a nearby apartment building.  When the pedestrian reached the driver's window, the two men appeared to speak.  The pedestrian then leaned toward the vehicle and moved his arms "in a manner consistent with the two men exchanging something"; however, officers did not observe the hands of the two men come together.  The interaction lasted about thirty seconds, after which the pedestrian returned to the apartment building.  Police did not observe anything in the pedestrian's hands at any time during or after the interaction.

The defendant resumed driving for a short distance until officers signaled for him to stop.  At this point, at least four officers and three police vehicles had arrived.  When engaged by two of the officers, the defendant avoided making eye contact.

---

[1] As discussed in detail <u>infra</u>, no further information was provided during the hearing regarding the reliability or veracity of the tipster.

Officers observed that the defendant was breathing heavily and looking in his rear and side view mirrors at the officers and vehicles behind him.

An officer issued an exit order to the defendant. As the defendant got out of his vehicle, the officer saw what appeared to be a roll of United States currency inside a clear plastic bag in the storage compartment of the driver's side door. A subsequent patfrisk revealed no weapons or contraband. Officers then searched the interior of the vehicle, and a drug-sniffing dog alerted for narcotics on the front passenger's seat. Police towed the vehicle to a police station, where a search of a box hidden inside the front passenger's seat revealed a "large amount" of cocaine inside plastic bags and several large stacks of cash.

Discussion. Because the search of the defendant's vehicle was a direct result of observations police made after stopping his vehicle and issuing an exit order, we must examine the constitutionality of both the stop and the exit order. See Wong Sun v. United States, 371 U.S. 471, 484-488 (1963); Commonwealth v. Tavares, 482 Mass. 694, 701-702, 706 (2019).

1. The stop. Police may effect a motor vehicle stop based on reasonable suspicion of criminal activity, or based on an observed civil infraction of the traffic laws. See, e.g., Commonwealth v. Buckley, 478 Mass. 861, 872 (2018); Commonwealth

v. Alvarado, 423 Mass. 266, 268 (1996). The Commonwealth maintains that the informant's tip, together with the observations police made of the defendant's interactions with an unknown pedestrian, provided reasonable suspicion that the defendant had engaged in a drug transaction, thereby justifying the stop. We are not convinced by the Commonwealth's argument on this point; however, as discussed infra, we conclude that the stop was authorized based on police observation of a motor vehicle infraction committed by the defendant.

a. The tip. Although the Commonwealth contends that the information provided by the tipster is properly part of the reasonable suspicion calculus, this was not the position the Commonwealth took at the motion hearing. At that time, the prosecutor indicated that the Commonwealth would use the tip only for "context" to "explain why the police were there."[2]

---

[2] At the beginning of the hearing on the defendant's motion to suppress, the prosecutor stated that she would not seek to "establish Aguilar-Spinelli" with the unidentified source's tip. See Spinelli v. United States, 393 U.S. 410 (1969); Aguilar v. Texas, 378 U.S. 108 (1964). Rather, the tip would "explain why the police were there," and the prosecutor indicated that she would object to any questions regarding the source of the tip.

Following up, the motion judge sought to confirm the prosecutor's position by asking whether "the Commonwealth will not be attempting in any way to rely" on the tip to justify the stop, exit order, or search. The prosecutor responded that the tip "provides context and stuff can be corroborated," that the tip "does not provide any sort of basis on its own for . . . any legal justification," and reiterated that she would object to questioning on the tip's source.

To be sure, it is common for the Commonwealth to withhold details about a confidential police informant who has provided a tip in order to ensure that the identity of the tipster is not revealed inadvertently.  See, e.g., Commonwealth v. Madigan, 449 Mass. 702, 705-706 (2007).  However, withholding information can affect the reasonable suspicion analysis depending upon the amount and type of information withheld.  See Commonwealth v. Costa, 448 Mass. 510, 515 (2007); Alvarado, 423 Mass. at 274; Commonwealth v. Lyons, 409 Mass. 16, 18-19 (1990).

Here, the Commonwealth presented no information at all regarding the basis of knowledge or the reliability of the confidential informant.  In fact, the prosecutor represented that the Commonwealth would use the tip solely for "context," would object to any questions regarding the "source" of the tip, and would not seek to "establish Aguilar-Spinelli" with the tip.  See Costa, 448 Mass. at 515 & n.9 (articulating "Aguilar-Spinelli" test).  For this reason, the defendant did not challenge the reliability of the tip,[3] and the motion judge did

_____

Defense counsel indicated that he understood that the prosecution would use the tip "for context only," and that the tip would not be used "under Aguilar-Spinelli to [support] the stop or search."  Defense counsel further agreed not to cross-examine any of the Commonwealth's witnesses on the informant's identity or the details of the tip.

[3] Had the Commonwealth made clear that it would seek to use the tip to support the legality of the stop, exit order, and

not consider it in analyzing the justification for the stop, exit order, and search. Accordingly, we similarly do not consider the tip in the reasonable suspicion analysis on appeal.[4]

b. The defendant's interaction with the unidentified pedestrian. The Commonwealth also points to police observations of the defendant interacting with an unidentified pedestrian as providing reasonable suspicion of criminal activity and, thus, justification for the stop. As mentioned supra, "[a] police officer may stop a vehicle in order to conduct a threshold inquiry if [the officer] has a reasonable suspicion that the occupants have committed, are committing, or are about to commit a crime." Commonwealth v. Wren, 391 Mass. 705, 707 (1984), and cases cited. However, "[the officer's] suspicion must be based

_____

search, the defendant would have been entitled to cross-examine the testifying officers in an attempt to assess the informant's basis of knowledge and reliability. See Commonwealth v. Bakoian, 412 Mass. 295, 308 (1992).

[4] At the end of the motion hearing, the prosecutor stated that the tip "could be corroborated," but that "in and of itself, [the tip] couldn't have provided any justification." To the extent that these statements could be understood to mean that the Commonwealth intended to demonstrate the informant's reliability and basis of knowledge through independent police corroboration of the tip's details, see Commonwealth v. Lyons, 409 Mass. 16, 19 (1990), this position would be inconsistent with the prosecutor's earlier representations. It also would have been materially unfair to use the tip to support the stop and search on this basis, especially because defense counsel relied on the prosecutor's previous representations in not cross-examining the Commonwealth's witnesses on the credibility of the tip.

on specific, articulable facts and reasonable inferences drawn therefrom.  A hunch will not suffice."  Id.

The motion judge found that the police made the following observations:

> "[The defendant] had stopped his vehicle on a public street; a second man immediately left the nearest building and walked to the driver's door of [the defendant's] vehicle[;] as the second man approached [the defendant] leaned down to his right as if he were reaching toward the floor by the front passenger seat; [the defendant] sat back up and interacted for no more than thirty seconds with the second man, who stood immediately outside the driver's door of [the defendant's] vehicle; during this interaction the second man leaned toward the [vehicle] as if he were reaching into the vehicle; and after no more than [thirty] seconds [the defendant] drove off and the second man walked back into the residential building he had emerged from a moment earlier."

We note that, although the motion judge did not consider the confidential informant's tip in his analysis of the propriety of the stop, he nevertheless concluded that the police observations provided reasonable suspicion that the defendant had sold illegal narcotics to the pedestrian.  We disagree.

In this case, neither the defendant nor the pedestrian was known to the officers conducting surveillance.  In addition, the area in which the men met was not known for drug activity. Compare Commonwealth v. Stewart, 469 Mass. 257, 261 (2014) (reasonable suspicion for stop where defendant with prior drug arrest was observed huddled with others briefly at site known for drug use); Commonwealth v. Levy, 459 Mass. 1010, 1011-1012

(2011) (reasonable suspicion for stop after individual made call on public telephone used frequently for drug transactions and driver arrived shortly thereafter to pick up individual, traveled around block, and then dropped individual off).

We also note that, although the pedestrian faced the defendant and moved one or both of his arms in a manner consistent with an exchange, the officers did not observe an object change hands and did not observe anything in the pedestrian's hands either before or after meeting the defendant.[5] As the Appeals Court rightly pointed out, the observed movements were just as consistent with any number of innocent activities, such as briefly greeting an acquaintance or asking for directions after looking at a map, as they were with an illegal drug transaction.  Barreto, 94 Mass. App. Ct. at 343-344.  See Commonwealth v. Clark, 65 Mass. App. Ct. 39, 44-45 (2005) (no reasonable suspicion for stop where individual in "high drug area" left bar, approached defendant, handed "an item" to defendant, and then returned to bar as defendant appeared to count money); Commonwealth v. Ellis, 12 Mass. App. Ct. 476, 477

---

[5] Although we have not adopted a per se rule that requires officers to be able to identify whether anything is exchanged in order to have reasonable suspicion to believe that a drug transaction has taken place, see Commonwealth v. Stewart, 469 Mass. 257, 263 (2014), citing Commonwealth v. Kennedy, 426 Mass. 703, 711 (1998), such an observation would be important in the reasonable suspicion analysis, see Kennedy, supra.

(1981) (no reasonable suspicion for stop where pedestrian passed what officer believed to be money through defendant's vehicle window and "something" was returned to pedestrian from inside vehicle). In short, the observations made, without more, were insufficient for a stop on suspicion of criminal activity.

c. The motor vehicle infraction. Although reasonable suspicion of criminal activity did not exist for the stop of the defendant's vehicle, the stop was nevertheless within the bounds of the law. Prior to pulling the defendant over, police observed the defendant make a left turn without using the vehicle's directional signal. As police may effect a stop after observing a motor vehicle infraction regardless of the officer's underlying motivation, the stop here was valid.[6] See Buckley, 478 Mass. at 873; G. L. c. 90, § 14B (failure to signal prior to turning). Having determined that the stop was lawful, we turn to an analysis of the exit order that followed.

2. The exit order. An exit order is not constitutionally justified based solely on a traffic violation. See Commonwealth v. Amado, 474 Mass. 147, 151 (2016). Thus, to be lawful, the

---

[6] "An appellate court is free to affirm a ruling on grounds different from those relied on by the motion judge if the correct or preferred basis for affirmance is supported by the record and the findings." Commonwealth v. Va Meng Joe, 425 Mass. 99, 102 (1997).

exit order can only be justified based on events or observations made by the officers after they stopped the defendant's vehicle.

Where a vehicle has been stopped for an observed traffic violation, an exit order issued to a driver or passenger of the vehicle is justified if (1) police are warranted in the belief that the safety of the officers or others is threatened; (2) police have reasonable suspicion of criminal activity; or (3) police are conducting a search of the vehicle on other grounds. See Amado, 474 Mass. at 151-152. As nothing in the facts found by the motion judge indicates that independent grounds for a search of the vehicle existed at the time of the stop, we look at whether the exit order was issued properly based on safety concerns or on reasonable suspicion of criminal activity once police stopped the defendant. Upon review, we conclude that there was no valid basis for the exit order.

a. Safety concerns. In determining whether an exit order was justified based upon safety concerns, "we ask whether a reasonably prudent [person] in the [officer's] position would be warranted in the belief that the safety of the police or that of other persons was in danger" (quotation and citation omitted). Commonwealth v. Gonsalves, 429 Mass. 658, 661 (1999). In reviewing the facts, we conclude that the answer to that question is "no."

When the defendant was pulled over, police observed that he was breathing heavily, he avoided making eye contact when answering questions, and he appeared nervous. He also looked in his rear view and side view mirrors at the several police officers and vehicles that had arrived. At the same time, the defendant responded to the officers' questions,[7] complied with all requests, and made no movements consistent with reaching for a weapon after he was stopped. Compare Commonwealth v. Feyenord, 445 Mass. 72, 76 (2005), cert. denied, 546 U.S. 1187 (2006) (exit order justified where defendant failed to produce identification, occupants of vehicle outnumbered officer, and defendant was visibly nervous); Commonwealth v. Stampley, 437 Mass. 323, 326-328 (2002) (exit order justified where occupants outnumbered officer and defendant in rear seat repeatedly reached beneath seat).

---

[7] Before issuing the exit order, an officer asked the defendant in English to state his date of birth; the defendant responded with a year. When the officer asked for a full date of birth, the defendant stated that he did not understand English. In closing at the motion to suppress hearing, the Commonwealth argued that the fact that the defendant initially answered questions in English before stating that he did not understand English supported the officers' reasonable suspicion and safety concerns. We note that the defendant's behavior was consistent with an individual who is not fluent in English attempting to cooperate with the police. The fact that the defendant attempted but was unable to answer fully police questioning due to a language barrier did not, absent more, contribute to safety concerns or suspicion of criminal activity.

Although "it does not take much for a police officer to establish a reasonable basis to justify an exit order or search based on safety concerns," Gonsalves, 429 Mass. at 664, the mere fact that an officer observes a driver's "nervousness and fidgeting," without more, does not warrant a belief that the safety of the officers or others is threatened, id. at 668-669. Indeed, many would likely be nervous in response to being stopped and approached by multiple police vehicles and officers. The exit order was not justifiable on the basis that police reasonably believed the defendant posed a safety threat. See Commonwealth v. Brown, 75 Mass. App. Ct. 528, 534 (2009) ("nervous or anxious behavior in combination with factors that add nothing to the equation will not support a reasonable suspicion that an officer's safety may be compromised"); Commonwealth v. Williams, 46 Mass. App. Ct. 181, 184-185 (1999) (exit order improper where based solely on observation that defendant "appeared extremely 'nervous'").

b. Reasonable suspicion of criminal activity. Just as police did not have reasonable suspicion of criminal conduct prior to stopping the defendant, we similarly conclude that the defendant's behavior after the stop did not provide the requisite suspicion of unlawful activity to justify an exit order on that basis. See Amado, 474 Mass. at 151-152. The only additional information that police had after executing the stop

that they did not have prior to the stop was the fact that the defendant appeared to be nervous and avoided eye contact while conversing with police.  "It is common, and not necessarily indicative of criminality, to appear nervous during even a mundane encounter with police . . . ."  Commonwealth v. Cruz, 459 Mass. 459, 468 (2011).  Given that police did not have reasonable suspicion prior to the stop, the sole additional fact that the defendant appeared nervous after the stop cannot create reasonable suspicion.  See Commonwealth v. Torres, 424 Mass. 153, 161 (1997) ("Adding up eight innocuous observations -- eight zeros -- does not produce a sum of suspicion that justifies . . . an order of persons out of their car . . .").

Conclusion.  Because the exit order was not lawfully issued, the evidence obtained from the subsequent search should have been suppressed as fruit of the poisonous tree.  Tavares, 482 Mass. at 701-702, 706, citing Wong Sun, 371 U.S. at 486-488. The order denying the defendant's motion to suppress evidence obtained as a result of the searches of his vehicle is reversed. The matter is remanded to the Superior Court for further proceedings consistent with this opinion.

So ordered.